312-0335, people of the state of Illinois, Appalachia, I present to you Kelly v. Patten v. Marrar, appellant Rick and Shaw. Good afternoon, Mr. Shaw. Good afternoon, Your Honors. Have you been here before? No, this will be my first floor. Welcome to our courthouse. We'll try to be kind to you. Appreciate it. Good afternoon, Your Honors. My name is Rick and Shaw, and I represent Hussain Marrar on behalf of the State Appellate Defender. After a stipulated bench trial, Marrar was convicted of unlawful possession of cannabis with intent to deliver and unlawful possession of a controlled substance. Mr. Marrar preserved his right to appeal issues related to the unlawful search and seizure. He requests that this Court reverse his conviction outright because the police lack reasonable suspicion to stop him, and the State cannot sustain convictions without the cocaine and cannabis obtained as a result of the unlawful stop. Just to jump into the facts a little bit and what happened, the confidential informant here gave Officer Sririshi Marrar's name, his gender, the make, color, and license plate number of his car, and told him that Marrar would be arriving at a particular apartment at 2 p.m. and he would be leaving that apartment between 2.30 and 3 p.m. The C.I. also, broadly speaking, would have stuck on him when he left the apartment. The C.I. stated that Marrar recently re-upped, meaning he got more drugs. And what time did the tip come in? What time did the tip come in? I believe it was the day that Marrar stopped. Okay, the morning. My question is aimed at I'm not sure why they didn't get a search warrant for the apartment. Yeah, they did get a search warrant. I'm sorry, Your Honors, I guess I don't understand your question. Well, if the tipster says he's going to be coming in and going to his apartment for lunch and then leaving to return back to work, it's implied that he's obtaining the drugs from the apartment. So why not get a search warrant for the apartment rather than wait until he comes back in the car and then stop it under an exigent circumstances argument? So that's why it was critical to me wondering what time the tip came in and was there enough time to get a search warrant for the dwelling. But if you don't know the time, I've interrupted your argument. You can proceed and we'll check the record later. This is okay, Your Honor. Yeah, I believe the tip came in the morning if I recall correctly off the top of my head. But yeah, I can't tell you exactly. And it is unclear as to why they didn't get a search warrant. If they were able to, perhaps they didn't think they had enough at that point to get a search warrant. And that's why they decided to just follow up with it. I'm guessing that's probably why. So to go back into it, basically the CIA informed Officer Ritchie that he recently re-upped. And when he re-ups, he usually gets a quarter pound of cannabis and an eight ball of cocaine but failed to establish his basis of knowledge. The officers had no basis to believe that the CIA was a credible informant or the information he provided was reliable because he was never successfully used in the past and he was working up some possible charges that are pending against him. When the officers found a car matching the description the CIA gave, they effectuated a traffic stop for Murar's vehicle solely based on the tip. There was no, he didn't violate any traffic laws or anything like that. And it was established, the officers actually testified that was the sole reason they stopped him. Prior to the stop, they merely corroborated innocent details of the tip, but there was no corroboration of any criminal activity. And the state argues in this brief that the tip that the police officers received from the CIA provided a reasonable suspicion to effectuate the traffic stop in Murar's car because the tip contained a range of details relating to Murar's future actions that could not easily be predicted. And the CIA's tip therefore indicated a sufficient basis of knowledge to provide the officers reasonable suspicion to effectuate an investigatory stop at Murar's vehicle. The state primarily relies on Alabama versus White for that proposition. However, the state's reliance on White is misplaced because language in the majority opinion, as well as the dissenting opinion, seem to make it clear that the case likely would have been decided differently in that record and established that the defendant in that case was a room clerk or telephone operator and he left for work at the same time each day. And I think that's the one thing that really distinguishes this case because in this case it's much clearer because Murar himself testified, and this was undisputed testimony because the CIA didn't testify, that he worked at NTS for two and a half years. And that two and a half years, every day he said he always went home for lunch. He usually left around at 145 p.m. His lunch hour was always between 2 and 3 p.m. So any of Murar's coworkers or neighbors who knew who Murar was could have easily obtained the information that the CIA provided the police. And just by way of example, I work with Pete Carasone, the deputy defender. So say I call the police. I'm familiar with his habits. Like clockwork. Over the lunch hour. Leaves, comes back. Go ahead. Just know for the record Mr. Carasone is in the courtroom. Yes, Your Honor. And he's nowhere I'm going to use as an example today. Essentially, I call the police on, say, Pete Carasone. He's going to be driving a Honda CRV, license plate number, days off, 7. At about 12 o'clock p.m. he'll be arriving at Flex Gym. At 1.30 p.m. he'll be leaving Flex Gym. I hear he's going to have drugs on him or he's going to have stuff on him when he leaves. I heard he recently re-upped it. But when he re-ups he usually gets a quarter pound of cannabis and an eight ball of cocaine. Virtually anyone who works in this office knows all this information. You can call the police and report what the CIA did here. And to uphold the trial court's order denying Murar's motion to suppress would in effect allow... You mean everybody in the office would know he had drugs? Well, not everyone in the office would know that he did drugs, Your Honor. But they would know his details, all the innocent details, which are the details that the police officers corroborated. And the fact that he has drugs is something that could easily be made up for someone who's vengeful against him. Perhaps maybe they got a bad evaluation and decided to call the police and have him get stopped. In effect, I think just that level of corroboration, there's a huge degree of predictability, which is something that distinguishes Alabama v. White from this case. And to uphold the trial court's order denying Murar's motion to suppress would in effect allow the police to stop anyone who goes home for lunch at the same time each day. The Co-Justice Stevens and White, they would make a mockery of the protections that the Fourth Amendment was intended to provide citizens. So in sum, because the police lack reasonable suspicion to stop Murar, the trial court should have suppressed all evidence obtained as a result of the search since it was a product of the legal staff. Moreover, because the state cannot sustain convictions without the cocaine and cannabis obtained as a result of the lawful staff, this court should reverse the conviction outright. Thank you, Your Honors. Thank you. Ms. Kelly, I see you actually wrote this brief and that you're going to be arguing it. I have to take full ownership of this one. And I know you've already kind of thought about what remarks you want to make, but I have a question about why not get a search warrant when he goes into the apartment at 2.05? They have 50 minutes. If it costs for a search warrant, you need probable cause for a terrorist attack and you need probable cause for a search warrant. First off, you need reasonable articulable suspicion, which is a lower level. And I think the police wanted, as was mentioned earlier, to get more information before asking for a search warrant. And again, I don't know the time frame. I don't recall the time frame except that he had spoken to him that day. I don't think it was a tremendous time frame because the evidence was I told the one officer or the other two officers who then went and staked out the house. So I think we're just talking about a few hours. But I don't think it was just because of the time frame. So you agree that my suspicions are correct. They didn't think they had enough to get a search warrant, but they did think they had enough for a terrorist attack. I would imagine that was it, yes. So why not stop him on the way in rather than the way out? I suppose just to corroborate more details, because the tip was that he would have the drugs on him when he went back to work. And that's why you wait until the way out. That would corroborate the predictive details at the tip. The tip in this case was quite different from the tip in Alabama v. White in that that was an anonymous tip where we have a known person. And as in Sparks, this is the first time he had given a tip. He was not unknown to Officer Ricci. Officer Ricci had had other dealings with him. Officer Ricci was in the process of signing him up as a confidential source, but he had not yet become fully documented as to that. In any case, this is going to be the first time that somebody gives information. And we do know the basis of knowledge of this tipster's information unlike in Alabama v. White. And he said he had spoken to the defendant that morning. This was somebody who had two months previously or within the past two months offered to sell him cannabis. And when he spoke with the defendant that morning, the defendant told him that he had re-upped. And the defendant told him what he had, and the defendant told him that he would have some drugs on him when he went back to work for later. That's why I assume they waited until the second part. But these were predictive details that were beyond just the innocent explanation of what time one leaves for work, goes home, and comes back to work. So this level of detail in this tip was much better than the level of detail in Spark's case, which the defendant relied upon below and relies upon here, where there were solely innocent details. In this case, we know the tipster's basis of knowledge, and we have a level of detail indicating, you know, he didn't just say, as Mr. Shah said in his example, I heard he'd have drugs on him. He said, the defendant told me that he had just re-upped last night and that he would have some drugs on him when he returned to work from his lunch break. Therefore, even though the officer had not yet had a tip that proved to be reliable from this person before, he knew who the person was, and he knew the person's basis of knowledge, and he had a sufficient level of detail to allow him to have reasonable articulable suspicion to execute the terrorist act. Are there any questions? No, thank you. Thank you. Mr. Shah, come on up. I just had a couple points on rebuttal. In response to the state, they try to distinguish an anonymous tip from a confidential informant, and I think it sparks along with a lot of this Court's cases. They essentially say, you know, that this Court treats a confidential informant the same as an anonymous source, and the reason for that is because defense, as well as this Court, is unable to assess the confidential informant's arrest. I'm not sure that's the case, though. There's a difference between anonymous and unidentified, because in this case, did the informant, was the informant present when the search warrant was executed? Did he make an affidavit or anything like that? Yeah, Your Honor, he wasn't present at the search warrants. Well, yeah, he did have an affidavit, Your Honor. See, that's different from somebody who picks up a cell phone while they're driving down the interstate and calls 911 and doesn't leave their name. They're truly anonymous. This was simply an unidentified informant. The police knew who he was, but your client doesn't, or didn't. That's true, Your Honor. One thing that the defendant was unable to do, though, was assess his veracity and assess his basis of knowledge during the motion to suppress, because he wasn't because he was unidentified. That is one issue with having a confidential informant, and one reason this Court should consider it. Not necessarily the exact same as an anonymous tip, but to a greater degree of skepticism than they would someone who was known, and or at least was disclosed. Another point that the State makes is that, essentially, there was a conversation between Murar and a confidential informant, and Murar told him that he sold him drugs. This is a point to make in my reply brief. This isn't something that's totally clear. The State primarily relies on the complaint from the search warrant to come up with that argument, which is something that Murar actually objected to being used as a basis to supplement Officer Cerici's testimony. Essentially, there's one sentence in here, basically. The CS stated that Hussein had stated earlier today that he had just re-upped, gotten more drugs last night. That statement alone, I don't think that necessarily means that they had a conversation together, even. For all we know, you could have overheard it, you could have heard it through the grapevine. We just don't know here, and there was just no way for the defense to figure out what his basis of knowledge was because the confidential informant wasn't disclosed. What's your position with the amount of, was it cannabis they found? Yes, Your Honor. 8.5 grams. That's not exactly consistent with re-upping. Isn't 8.5 grams a really small amount? Yes, Your Honor, that is a very small amount, and that was cocaine. Okay, sorry. Well, maybe that's not such a small amount. It's a fairly small amount. When the officers find a small amount in the vehicle rather than the large amount that he supposedly re-upped, what does that do to your analysis? Do you think that's sufficient corroboration? I'm sorry, Your Honor. At that stage, essentially my argument is that they just didn't have enough to stop him to begin with. The fact that they found drugs as corroboration, I think that goes to a later question of whether that probably causes searches. If you have the search warrant, you can search his apartment, but at the stage when you pull them over, they didn't have any type of corroboration, and that's essentially the defense's argument. Thank you. You did a nice job for your first time in front of the court. Thank you, Your Honors. We'll be taking the matter under advisement and hopefully running a decision without undue delay. For now, we'll stand in recess for our panel.